**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

JOSE NAZARIO BARERRA ROMERO, *et al.*,

Petitioner,

v.

ASHLEE HESMAN, *et al*.,

Respondents.

Case No. 2:26-cv-02222-RFB-NJK

**ORDER GRANTING WRITS OF HABEAS CORPUS**

Petitioners Jose Nazario Barerra Romero, Ignacio Aguirre Calixto, Leobardo Gomez Lopez, German Jimenez-Jimenez, and Jordin Dandy Rios Vargas filed a joint petition for writs of habeas corpus under 28 U.S.C. § 2241. See generally Joint Pet. for Writ of Habeas Corpus, ECF No. 1 (July 22, 2026) [hereinafter, "Joint Pet."]. For the following reasons, the Court grants the Petition, awards Petitioners writs of habeas corpus, and directs Respondents to immediately release them from custody.

## I.   INTRODUCTION

Petitioners challenge the lawfulness of their ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Petitioner Barerra Romero has presumably[1] been detained since January 11, 2026. See Form I-213, ECF No. 2-2 at 3. Petitioner Aguirre Calixto has been detained since February 24, 2026. See Form I-213, ECF No. 2-1 at 4. Petitioner Gomez Lopez has been detained since December 11, 2025. See Form I-213, ECF No. 2-3 at 6. Petitioner Jimenez-Jimenez has been detained since October 31, 2025. See Form I-213, ECF No. 2-4 at 7. Petitioner Rios Vargas has been detained since December 5,

---

[1] Mr. Barerra Romero's whereabouts are unknown. See *infra* 5 n. 4.

2025. See Form I-213, ECF No. 2-5 at 2.

After preliminarily reviewing the joint petition, the Court ordered Respondents to "file a response which shows cause for Petitioners' detention by "'certifying [its] true cause.'" Order to Show Cause, ECF No. 4 (July 23, 2026) (quoting 28 U.S.C. § 2243) (alteration in original) (citation modified). Respondents failed to do so. See generally Fed. Resp'ts' Responses to Interrogatories, ECF No. 7 [hereinafter "Resps. to Interrogs."] (failing to certify the true cause of detention for Petitioners). However, Federal Respondents represent that, in detaining Petitioners, they acted pursuant to an internal ICE memorandum issued on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" ("July 8th Memo"). See id. at 3, 6, 9, 12, 15. While district courts need not act as "pigs, hunting for truffles," Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (citation omitted), it nonetheless finds that Respondents have applied their vacated mandatory detention policy to Petitioners and are thus detaining them under 8 U.S.C. § 1225(b)(2)(A). Broadly speaking, this provision of the Immigration and Nationality Act ("INA") authorizes the government to hold *certain* noncitizens in mandatory detention throughout their immigration proceedings.[2]

Petitioners assert membership in the certified class action pending before this Court in Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC (D. Nev.) ("Class Members"). Joint Pet. at 2; see also generally Jacobo-Ramirez v. Noem,[3] 823 F. Supp. 3d 1182 (D. Nev. 2026) [hereinafter, "Jacobo-Ramirez I"] (certifying a class of undocumented noncitizens who are, or will be, subject to mandatory detention within the District of Nevada under the Executive Branch's reinterpretation of § 1225(b)(2)(A)). Petitioners seek to enforce their rights as established by this Court in its March 30, 2026, Order, as a Class Member. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799 (D. Nev. Mar. 30, 2026) [hereinafter, "Jacobo-Ramirez II"] (granting partial summary judgment in favor of Class Members on their statutory and regulatory claims).

Through the Jacobo-Ramirez judgment, the Court declared that Class Members "are

---

[2] Even when § 1225(b)(2)(A) is properly construed, it is not absolute. Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

[3] Kristi Noem has since been substituted out for the current Secretary of Homeland Security. See Fed. R. Civ. P. 25(d).

subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations"; therefore, they are "not subject to detention under 8 U.S.C. § 1225(b)(2)(A)." Id. at *33. Moreover, on July 30, 2026, the Ninth Circuit vindicated this Court's statutory interpretation. In Rodriguez Vazquez v. Bostock, the Ninth Circuit explicitly rejected the government's contrary statutory interpretation, rendering the application of § 1225(b)(2)(A) as to Petitioners unequivocally illegal within this circuit. See generally --- F.4th ---, 2026 WL 2196424 (9th Cir. July 30, 2026).

Furthermore, this Court set aside (i.e., vacated) Federal Respondents' (a.k.a., "the government") related, unlawful detention policies pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). See Jacobo-Ramirez II, 2026 WL 879799, at *33. Those policies were captured in: (i.) the July 8th Memo, and (ii.) the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See Jacobo-Ramirez II, 2026 WL 879799, at *8–9 (discussing the July 8th Memo, which set forth the "formal nationwide policy of DHS and DOJ," and Hurtado, in which the Executive Office for Immigration Review ("EOIR")—i.e., the immigration "courts"—formally adopted this policy).

Petitioners seek release from detention because Federal Respondents have purportedly refused to comply with § 1226(a), its implementing regulations, and this Court's class-wide partial summary judgment. See Joint Pet. at 2; Joint Traverse, ECF No. 8 at 5–7 [hereinafter, "Joint Reply"]. Petitioners also assert their arrests and detention, without required procedures, violate the Due Process Clause of the Fifth Amendment. See Pet. at 10–13; Joint Reply at 5–7. Federal Respondents have failed to reply to Petitioners' class membership and due process claims. See generally Resps. to Interrogs. In doing so, the government concedes Petitioners' class membership, invokes no other statutory authority for Petitioners' detention, provides no response to Petitioner's due process claim, and does not assert any individualized justification for Petitioner's detention. See id.

Thus, as discussed in more detail below, the Court finds Petitioners are Jacobo-Ramirez Class Members, and Respondents have asserted a detention authority that is unlawful as applied to each Petitioner. Therefore, their arrests and ongoing detention under § 1225(b)(2)(A) are unlawful under the INA, this Court's declaratory judgment/vacatur, and the law of this circuit.

Further, the Court finds Petitioners' arrests and ongoing detention without the procedural protections required by § 1226(a)'s regulatory scheme violate their constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioner's unlawful detention—and the government's defiance of <u>Jacobo-Ramirez</u>—is: (i.) immediate release from custody; (ii.) a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A); and (iii.) an order requiring Federal Respondents to follow appropriate procedures if they seek to re-detain Petitioners under § 1226(a).

## II.    CLASS MEMBERSHIP

Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that each petitioner is a member of the <u>Jacobo-Ramirez</u> Class. <u>See</u> <u>Carlson v. Landon</u>, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Notably, Respondents have failed to reply to Petitioners' claims of class membership and thereby waive opposition to class membership. <u>See generally</u> Resps. to Interrogs.; LR 7-2.

### A. MEMBERSHIP

#### a.  *Jose Nazario Barerra Romero*

Initially, Petitioner Jose Nazario Barerra Romero is a member of the <u>Jacobo-Ramirez</u> Class. The Parties agree that he satisfies the criteria of class membership. <u>See</u> Joint Pet. at 7; Resps. to Interrogs. at 3 (failing to reply and thereby conceding class membership). Based on their undisputed factual allegations, which this Court accepts as true, the Court finds that Mr. Barerra

Romero falls within the class.[4]

### b. *Ignacio Aguirre Calixto*

Petitioner Ignacio Aguirre Calixto is also a member of the Jacobo-Ramirez Class. The Parties agree that he satisfies the criteria of class membership. See Joint Pet. at 7–8; Resps. to Interrogs. at 6 (waiving opposition). Based on their undisputed factual allegations, which this Court accepts as true, the Court finds that Mr. Aguirre Calixto falls within the class.

### c. *Leobardo Gomez Lopez*

Petitioner Leobardo Gomez Lopez is also a member of the Jacobo-Ramirez Class. The Parties agree that he satisfies the criteria of class membership. See Joint Pet. at 8; Resps. to Interrogs. (waiving opposition).[5] Based on their undisputed factual allegations, which this Court accepts as true, the Court finds that Mr. Gomez Lopez is a member of the Jacobo-Ramirez Class.

### d. *German Jimenez-Jimenez*

Petitioner German Jimenez-Jimenez is also a member of the Jacobo-Ramirez Class. The Parties agree that he satisfies the criteria of class membership. See Joint Pet. at 8–9; Resps. to Interrogs. at 12 (waiving opposition). Based on their undisputed factual allegations, which this Court accepts as true, the Court finds that Mr. Jimenez-Jimenez is a member of the Jacobo-Ramirez Class.

### e. *Jordin Dandy Rios Vargas*

Petitioner Jordin Dandy Rios Vargas is also a member of the Jacobo-Ramirez Class. The Parties agree that he satisfies the criteria of class membership. See Joint Pet. at 9; Resps. to Interrogs. at 15 (waiving opposition). Based on their undisputed factual allegations, which this

[4] In addition, the Court finds Federal Respondents' treatment of Mr. Barerra Romero especially troubling. Counsel for Mr. Barerra Romero has represented that his whereabouts are unknown, and it is unclear whether Mr. Barerra Romero is still in the District of Nevada. Respondents are ordered to show cause why they have not violated this Court's July 23, 2026, Order, see ECF No. 4, enjoining Petitioners' transfer from this District. See *infra*.

[5] The Court notes that Mr. Gomez Lopez received a bond hearing. See Joint Pet. at 8. However, the provision of a *post-deprivation* bond hearing does not place a noncitizen beyond the Jacobo Ramirez Class. On this point, the Court incorporates by reference, as if it were set forth in full herein, its decision in Sanchez Sandoval v. Blanche, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675 (D. Nev. June 23, 2026) (footnote omitted) ("Since Petitioner's . . . detention without appropriate procedures was unlawful . . . , the subsequent bond hearing did nothing to address this unlawful conduct. Respondents cannot cure [their] violations by conducting a post hoc bond hearing."). Moreover, as Respondents have disavowed reliance on § 1226 and its implementing regulations and procedures, it is unclear what statute—and associated standards, burdens or procedures—apply to such a legally-untethered "bond hearing" proceeding.

Court accepts as true, the Court finds that Mr. Rios Vargas is a member of the Jacobo-Ramirez Class.

**B. CLASS-WIDE RELIEF**

As Jacobo-Ramirez Class Members, Petitioners are entitled to the relief afforded to the Class by this Court. The declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment[.]" 28 U.S.C. § 2201(a). In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) (citation omitted) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments."). Moreover, Federal Respondents (and this Court) are obligated to abide the Ninth Circuit's binding judgment in Rodriguez Vazquez, which explicitly rejected the government's novel reimagination of § 1225(b)(2)(A) and held that noncitizens like Petitioners fall within the detention regime set out in § 1226, not § 1225(b)(2)(A). See Rodriguez Vazquez, 2026 WL 2196424, at *3 ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).").

Federal Respondents—who have not filed an appeal in Jacobo-Ramirez—offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Class Members in spite of this Court's binding judgment and that of the Ninth Circuit. Their brazen defiance is troubling, unnecessary, and toxic to judicial economy, individual rights, and the rule of law. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) (citation and internal quotation marks omitted) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*."); id. (citation and internal quotation marks omitted) ("This form of relief conclusively resolves the legal rights *of the*

*parties*."). Because Federal Respondents' only basis for detaining Petitioners is § 1225(b)(2)(A), see generally Resps. to Interrogs., the Court must—once again—reiterate its finding, and the law of this circuit, that Petitioners' ongoing detention is unlawful under the INA because it is actually governed by § 1226(a) and its implementing regulations, as set forth in Rodriguez Vazquez, and this Court's class-wide declaratory judgment. See Jacobo-Ramirez II, 2026 WL 879799, at *33.

### III.    DUE PROCESS

The government provides no response to Petitioners' claims that their detention violates due process. See generally Resps. to Interrogs. Importantly, the class-wide due process claim has not been litigated in Jacobo-Ramirez. See Jacobo-Ramirez II, 2026 WL 879799, at *2 ("Plaintiffs also claim that the [government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on thi[s] claim[ ]."). The Court thus turns to the merits of Petitioners' due process claim.

As a threshold matter, Class Members and similarly situated noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez I, 817 F. Supp. 3d at 1053–54. The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citations omitted); see also Shaughnessy v. U.S. *ex rel.* Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added), superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam, 345 U.S. 206 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted) (Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Hence, the Supreme Court has consistently—and repeatedly—held that the Executive Branch cannot "disregard the

fundamental principles" of "due process" while interacting with noncitizens who have "entered the country, and [ ] become . . . a part of its population," even those who are allegedly undocumented. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903); see also U.S. v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits no exception: [a noncitizen] who has entered the United States is guaranteed due process protections.").

Physical freedom "lies at the heart" of the Due Process Clause—i.e., an individual cannot be deprived of their physical freedom without due process of law. See Zadvydas, 553 U.S. at 690 (citation omitted). Furthermore, "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) (quoting Miranda v. Garland, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects Class Members to civil detention without supplying these basic, *fundamental*, procedural safeguards, their actions run afoul of the Due Process Clause.

Meanwhile, § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty—as recognized by the Ninth Circuit. See Jacobo-Ramirez II, 2026 WL 879799, at *6 (quoting Rodriguez Diaz, 53 F.4th at 1196). These protections include, but are not limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—i.e., receive a custody redetermination (bond) hearing before an immigration judge ("IJ"). See Rodriguez Diaz, 53 F.4th at 1201–1202 (first, holding the detention scheme set forth in § 1226(a) and its implementing regulations constitutional under the Due Process Clause; second, detailing the numerous levels of review provided by the protections therein, including "the agency's initial custody determination . . . an initial bond hearing before a neutral decisionmaker . . . and the right to seek a new hearing when circumstances materially change"; and finally, stating that § 1226(a)'s procedures stand as a reference point for the due process that should be required under the INA's

other detention provisions); see also Jacobo-Ramirez II, 2026 WL 879799, at *6 (discussing the same procedures, in addition to the "notice to appear" and arrest warrant requirements set forth by the statute and regulations).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures and are thus unmoored from any constitutional guardrails. As a result, noncitizens arrested and detained pursuant to policies, like Petitioners, can be indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without adequate process.

Indeed, DHS and DOJ's § 1225(b)(2)(A) detention policy, as articulated in the July 8th Memo, instructs ICE agents to forego procedures previously afforded to noncitizens like Petitioner. Specifically, the July 8th Memo instructs against issuing any "Form I-286, Notice of Custody Determination" because individual custody determinations are only required by § 1226. See Jacobo-Ramirez II, 2026 WL 879799, at *8 (quoting the July 8th Memo). Despite the Court's vacatur of that policy as to Class Members on March 30th, see id. at *33, the government is still detaining Class Members without any pre-deprivation procedures to determine whether detention is justified.[6] This is troubling, as the government has "no legitimate interest in detaining individuals who [are] not . . . a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation omitted); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine [their] status without running the risk of the [noncitizen] either absconding or engaging in criminal activity,' Jennings v. Rodriguez, 583 U.S. 281, 286 (2018), that is not what is going on here, where detention is mandatory regardless of these risks.") (citation modified); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing

---

[6] As explained in greater detail below, see infra Part III, Federal Respondents have recently confirmed that they are not conducting initial custody determinations, or issuing Form I-286 notices of such determinations, to any Class Members.

danger to the community.") (citing Zadvydas, 533 U.S. at 690).

Considering the above, this Court found that the government's expansion of § 1225(b)(2)(A)—which mandates the arbitrary detention of millions of undocumented noncitizens living in the United States—raises serious constitutional concerns. See Jacobo-Ramirez II, at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (citations omitted) (outlining "constitutional alarms" that flow from the government's mandatory detention policies, namely: (i.) unjustified detention; (ii.) prolonged detention; and (iii.) the absence of counsel, which frustrates noncitizens' ability to challenge their detention). Many of these constitutional concerns are Petitioner's current reality.

Because this Court has found Petitioners—and those similarly situated—are properly subject to the discretionary detention scheme of § 1226(a) under the INA itself, the Court compares the procedures they have been afforded heretofore under the § 1225(b)(2)(A) scheme to those they are owed by the § 1226(a) scheme. Cf. Rodriguez Diaz, 53 F.4th at 1202 ("[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)].") As explained below, the Court concludes that Petitioners' arrests and detention without the procedural protections provided by § 1226(a) violate their right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioners, including in these habeas proceedings, violates their rights to substantive due process.

### A. PROCEDURAL DUE PROCESS

The Fifth Amendment imposes procedural "constraints on government decisions which deprive individuals of" their liberty. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The specific demands of due process are flexible. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine them, courts consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards";

and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted); see also Rodriguez Diaz, 53 F.4th at 1203–1207 (reaffirming that the Mathews test is appropriate in the context of immigration detention). After carefully balancing these factors, the Court concludes that they weigh in favor of Petitioner, such that Petitioner's ongoing detention has not—and cannot—satisfy the procedural demands of due process.

       i.      *Private Interest*

First, the government is depriving Petitioners of their paramount interest in their own physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citation omitted) ("[T]he interest in being free from physical detention by one's own government" "is the most elemental of liberty interests."). This interest is especially weighty here, considering the lack of process they have received, and that was available to them at the outset of their detention. See Rodriguez Diaz, 53 F.4th at 1208 ("[I]n evaluating [a noncitizen's] interests under the first prong of [ ] Mathews, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . . ."). Unlike the noncitizen in Rodriguez Diaz, who was afforded the full breadth of procedural protections under § 1226(a), Petitioners' detention under § 1225(b)(2)(A) affords no pre-deprivation process at all as a matter of statute.[7]

Moreover, Petitioners are independently entitled to each of the procedures set forth in § 1226(a) and its implementing regulations. These procedures were specifically designed to protect the liberty interests of certain noncitizens, including Class Members, while preserving agency discretion. As a result, noncitizens that should be subject to § 1226(a) and its accompanying procedures have a liberty interest in the government *following those procedures*. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956–57 (9th Cir. 2012) (finding that the detailed statutory scheme surrounding extradition has "generate[d] interests cognizable as liberty interests under the Due Process Clause" and an extraditee's "liberty interest under the federal statute and federal

---

[7] See *infra* Part III.A.ii. for discussion of the specific procedural protections under § 1226(a) that Petitioners have been deprived of under the government's instant application of their unlawful policies.

regulations entitles him to strict compliance by the Secretary of State with the procedure outlined in the regulations"). The necessary and unique purpose of each procedure is described in detail *infra*, Part III.A.ii.

Further, Petitioners' interest in their own freedom is not diminished by the fact that they could have pursued, or were supplied, a post-deprivation bond hearing. Where physical liberty is at stake, pre-deprivation process is necessary, and the lack of such process cannot be cured by the government's ability to conduct a post-hoc bond hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)); see also Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970) (describing how due process principles require "timely and adequate notice detailing the reasons for a proposed termination" prior to a pre-termination hearing).

   ii.   *Risk of Erroneous Deprivation*

Second, the risk of an erroneous deprivation of liberty is intolerably high under the government's faulty application of § 1225(b)(2)(A), which contains absolutely no procedural protections. While the government does not need to "undertake every possible effort to mitigate the risk of erroneous deprivation and the potential harm to the private party[,]… the Constitution does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests." Kashem v. Barr, 941 F.3d 358, 379 (9th Cir. 2019).

Here, however, the government has acted unreasonably in eschewing its own statutory scheme—a scheme already heavily deferential to agency discretion—to do even less, that is, nothing at all. See Escobar Salgado, 809 F. Supp. 3d at 1161 ("There are no existing procedures whatsoever for [Class Members] to challenge their detention pending the conclusion of their removal proceedings."). Case in point, under the government's interpretation, it does not have to determine whether Petitioners' detention serves a constitutional purpose. The government does not have to provide notice of its custody determination. Nor does the government have to afford

Petitioners an opportunity to challenge the legality of their detention. As this Court has previously explained, this detention scheme epitomizes arbitrariness, as immigration officials have the "sole, unguided, and unreviewable discretion to detain [Class Members]." Id. It stands in stark contrast to the government's own well-established procedures under § 1226(a), which serve as a safeguard against the erroneous deprivations of liberty. See Rodriguez Diaz, 53 F.4th at 1210 (citation omitted).

Under § 1226(a)'s regulatory scheme, the government must abide by numerous levels of process in arresting and detaining a noncitizen. First, a noncitizen cannot be detained without notice of the basis of their detention vis-à-vis a notice to appear ("NTA"), which must also be signed and served by a designated immigration officer. See 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1, 1003.15(b)(1). Per the governing regulations, which have been codified into statute at 8 U.S.C. § 1229(a)(1), the NTA must include, inter alia, the following information: "(1) [t]he nature of the proceedings against the [noncitizen]; (2) [t]he legal authority under which the proceedings are conducted; (3) [t]he acts of conduct alleged to be in violation of law; (4) [t]he changes against the [noncitizen] and the statutory provisions alleged to have been violated." 8 C.F.R. §§ 1003.15(b)(1)–(4); 8 U.S.C. § 1229(a)(1). Second, a noncitizen who falls within the § 1226(a) statutory scheme cannot be arrested and taken into ICE custody without an administrative warrant,[8] which must be issued, signed, and served by a designated immigration officer simultaneous to, or after, the issuance of an NTA. See 8 C.F.R. §§ 236.1(b); 287.5(c), (e)(2), (e)(3); 287.8(c).

Third, "[w]hen a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," wherein the noncitizen has a pre-deprivation opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons,

---

[8] This Court previously explained the limited exceptions to this requirement as follows:

> Immigration officers are authorized to make warrantless arrests in limited circumstances under the INA. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of [noncitizens]," or when an officer has reason to believe (i.) the noncitizen is in the United States in violation of such laws or regulations and (ii.) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4)-(5) (providing other circumstances that justify warrantless arrest).

Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (emphasis added).

and that the [noncitizen] is likely to appear for any future proceeding," such that they can be released on bond and/or supervisory conditions, rather than detained while their removability is adjudicated. Rodriguez Diaz, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

Fourth and finally, a noncitizen has the right to appeal an ICE officer's custody determination through a prompt hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Rodriguez Diaz, 53 F.4th at 1197 (citation and internal quotation marks omitted); see also 8 C.F.R. §§ 236.1(d)(1), 1003.19. At this hearing, the noncitizen bears the evidentiary burden of overcoming the presumption of detention. See In re Guerra, 24 I&N Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 424 U.S. at 345–46. Taken together, these procedures ensure that the government has a factual and legal basis for determining that a noncitizen's pre-adjudicative detention is necessary; simultaneously, they guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal. See Rodriguez Diaz, 53 F.4th at 1210 ("These procedures ensure[ ] that the risk of an erroneous deprivation would be relatively small.") (citation and quotation marks omitted).

Because Petitioners have not been afforded these procedures in full, they face an excessive risk of erroneous deprivation. Specifically, based on the limited information provided to the Court, the Court finds Petitioners have been deprived of initial custody determinations (Form I-286's) at

- 14 -

minimum. See generally Resps. to Interrogs.[9]

For these reasons, the Court additionally finds that the availability of a post-deprivation bond hearing does not cure the risk of erroneous deprivation. Where physical liberty is at stake, some form of pre-deprivation process—akin to § 1226(a)'s procedural guardrails—is necessary. See Loudermill, 470 U.S. at 542 ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane, 339 U.S. at 313); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569–70 (1972) (footnote omitted) (Where liberty is "implicated, the right to some kind of prior hearing is paramount."); Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) ("Absent the necessity of quick action by the State or the impracticability of providing any predeprivation process, a post-deprivation hearing [ ] would be constitutionally inadequate.") (internal quotation marks omitted) (citing to over a half dozen Supreme Court precedents that support this conclusion). The government has identified no impracticality nor necessity nor other extraordinary circumstance that would justify their failure to supply pre-deprivation process here. Thus, the government's ability to conduct a post-hoc bond hearing after Petitioners have already been subjected to procedures that do not adequately guard against arbitrary detention, makes no difference—a finding our sister district courts have already made in this same context:

> Indeed, given the nature of the constitutional violation [Petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate. This is particularly so given that [d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (internal quotations and

---

[9] Respondents claim that Mr. Rios Vargas was arrested pursuant to a valid I-200 Administrative Warrant. See Resps. to Interrogs. at 15. However, they have not produced a valid warrant for Mr. Rios Vargas' instant arrest. Rather, they have provided an I-200 warrant from December 2023. This is particularly concerning. See Djiwaje, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,]" such that a noncitizen was entitled to immediate release in the absence of a proper warrant). Thus, the Court finds that Respondents' failure to arrest Mr. Rios Vargas pursuant to a valid administrative warrant independently violates his due process rights.

citation omitted); see also Zaitsev v. Warden, Adelanto, No. 2:26-cv-00454-SPS-AGS, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.") (internal quotation marks omitted).[10]

In sum, § 1226(a) and its implementing regulations set forth procedural safeguards that work together to significantly reduce the risk of erroneous deprivation. For thirty years, these procedures have consistently been applied to individuals like Petitioners, affording them notice and an opportunity to be heard and, thereby, protecting them against arbitrary detention.[11] Indeed, the government's failure to provide these procedures flies in the face of the Ninth Circuit's finding that § 1226(a)'s procedural scheme comports with the demands of our Constitution. See Rodriguez Diaz, 53 F.4th at 1209–10.

    *iii.    Government's Interest*

Third, the government's interest in enforcing immigration law, and presumed interest in detaining noncitizens who are dangerous and/or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections that were typically afforded to noncitizens like Petitioners. See Escobar Salgado, 809 F. Supp. 3d at 1161–62. The government has, for years, demonstrated its ability to adequately administer the regulatory scheme set forth in § 1226(a) to

---

[10] Moreover, if a noncitizen appeals their custody redetermination decision to the BIA, see 8 C.F.R. § 1003.38, it is unclear whether that noncitizen would remain subject to § 1226(a)'s procedures and standards, even if the IJ conducted the custody redetermination under pursuant to § 1226(a). While Hurtado is vacated within this district by Jacobo-Ramirez II—and Hurtado's statutory interpretation has been rendered unlawful in six circuits and counting, see generally Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Rodriguez Vazquez, 2026 WL 2196424 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026)—the BIA has taken no action to stay, reverse, or otherwise enjoin Hurtado nationwide. Thus, treatment of noncitizens like Petitioners under § 1225(b)(2)(A) remains "good law" in the eyes of the BIA. For that reason, this Court has little faith that a noncitizen would be afforded coherent procedural protections that comport with the INA, the law of this Circuit, and due process if forced to seek an appeal of an adverse § 1226(a) custody redetermination decision before the BIA.

[11] Even when compared to other mandatory detention provisions of the INA—which apply to noncitizens arrested within the interior of the country (like Petitioners) and not while arriving at its borders—individuals detained under § 1225(b)(2)(A) are uniquely deprived of procedural protections, namely pre-deprivation notice and a timely opportunity to challenge the government's basis for their arrest and detention, as, for example, based on a mistake of fact. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I&N Dec. 799 (BIA 1999)).

the satisfaction of its own interests. Moreover, the procedural requirements of § 1226(a) *reduce* the fiscal and administrative burden of civil immigration detention by limiting detention to noncitizens who are actually dangerous or a flight risk. See id. at 1162 ("[T]he Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing [ ] procedures serves the government's and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention."); see also Jacobo-Ramirez II, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Similarly, the public interest is served by the procedures under § 1226(a), as these limit the "substantial societal costs" that "unnecessary detention imposes" by "separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings[,] and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (citation omitted).

### B. SUBSTANTIVE DUE PROCESS

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (citation omitted). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and 'narrow' nonpunitive 'circumstances,' [see] Foucha v. Louisiana, 504 U.S. 71, 80 (1992), where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (citation modified) (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)). To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioners of their] freedom. Thus, the Court finds that Petitioners' detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioners' detention violates procedural and substantive due process and is, therefore, unconstitutional.

## IV.    REMEDY

Based on the record before it, the Court finds that Petitioners have been subjected to arbitrary, erroneous detention in violation of their statutory rights, as well as the Jacobo-Ramirez judgment. Thus, the Court's task is to determine the appropriate remedy for these violations. See Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . ."); Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As previously stated, Respondents have asserted that 8 U.S.C. § 1225(b)(2)(A)—and its associated procedures, or rather, lack thereof—governs Petitioners' detention. Respondents have explicitly disavowed any reliance on 8 U.S.C. § 1226(a), including its implementing regulations and associated procedures, as the authority that governs Petitioners' detention, despite numerous rulings from this Court—and six circuit courts—which reach the opposite conclusion. See Jacobo-Ramirez, 2026 WL 879799, at *34–35 (collecting cases); see also generally Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Rodriguez Vazquez, 2026 WL 2196424 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026). The Court thus finds that Respondents have relied upon unlawful statutory authority for Petitioners' arrest and continued detention with no indication that they have applied the proper detention authority, 8 U.S.C. § 1226(a), or the procedures required therein as to Petitioners.

Moreover, the Court finds that, to the extent Respondents have afforded Petitioners *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full—as required by the statute, its implementing regulations,

and this Court's declaratory judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201–1202 (9th Cir. 2022); see also generally Resps. to Interrogs. (conceding that ICE did not conduct an initial custody determination as to any petitioner for purposes of their most recent arrest); see also Joint Reply at 6–7 (identifying the same). To the contrary, Federal Respondents have conceded—in both sworn interrogatories and open court—that they are not conducting initial custody determinations (one such procedure) or issuing Form I-286 notices of initial custody determinations to Class Members as a matter of policy. See Hr'g Tr. at 17:22–20:10, Jacobo-Ramirez, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 1, 2026) (ECF No. 157); Resps. to Interrogs.

The government has openly defied Jacobo-Ramirez, and the mandates it set forth for months, repeatedly asserting this rejected detention authority to justify their practice of indiscriminately detaining noncitizens like Petitioners. Now, that "authority," as applied to Petitioners, has been squarely rejected by the Ninth Circuit. See Rodriguez Vazquez, 2026 WL 2196424, at *10–26. On that basis, the Court finds Respondents have failed to identify any lawful authority that permits Petitioners' continued detention when called to do so by this Court. Thus, immediate relief is the sole appropriate remedy.

The Court also finds, based upon Respondents' history[12] of misconduct with respect to these cases, it must adopt additional equitable remedies to ensure that Federal Respondents abide by the appropriate statutory authority, its implementing regulations, and associated procedures.[13] Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the

---

[12] To elaborate, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters. These violations include, *inter alia*: removing petitioners from the District of Nevada; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. See, e.g., Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).

[13] The Court adopts this additional equitable remedy, in part, as a means of safeguarding Petitioner's due process rights. The Ninth Circuit has, when deciding a facial challenge to 8 U.S.C. § 1226(a) brought under the Fifth Amendment's Due Process Clause, recognized that § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. Rodriguez Diaz, 53 F.4th at 1196. "[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)]." Id. at 1202. Because Petitioner has also raised a due process challenge to his detention, the Court finds it appropriate to ensure that those rights are protected moving forward.

- 19 -

Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioners under § 1226(a), Federal Respondents must provide them with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioners' rights to date.

## V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioners' Joint Petition for Writs of Habeas Corpus (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **SHOW CAUSE** as to why they did not violate this Court's July 23, 2026, Order (ECF No. 4) enjoining Petitioner Barrera Romero's transfer from this District.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioners from detention on their personal recognizance on **August 8, 2026**, between the hours of **1:00 P.M. and 3:00 P.M.** Counsel for Petitioners (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioners' liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must **RETURN** Petitioners' personal

property—including personal identification and/or employment authorization documents—upon their release.

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioners during the pendency of their current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioners under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **August 11, 2026**, confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioners' release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioners' personal property.

The Clerk of Court is kindly instructed to update the docket to:

1. **AMEND** Petitioner Jose Nazario Romero Barberra's name to "Jose Nazario Barerra Romero."

2. **AMEND** Petitioner Jordin Dandy Vargas Rios's name to "Jordin Dandy Rios Vargas."

The Clerk of Court is also kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioners may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** August 7, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**